### Ex parte JACKSON.

(First Division. Juneau. September, 1922.)

#### No. 2218.

**Criminal Law ☜507(1)—Habeas Corpus ☜85(1)—Accomplice Testimony.**

Petitioner was held to answer to the grand jury on a charge of murder, upon the unsupported evidence of one Hanson. Petitioner, and Hanson went to the house of one Lott at night. They landed from a boat on the beach, and petitioner went up to the house to buy some beer, while Hanson remained at the boat. Soon after going to the house, petitioner called Hanson to come up to the house, where he saw Lott lying by the side of the house dead. Hanson testified to these facts on preliminary hearing, and upon the evidence petitioner was held. On habeas corpus to release petitioner, his attorney contended that Hanson was an accomplice, and that petitioner could neither be held nor convicted on Hanson's unsupported testimony. *Held*, Hanson was not an accomplice in the killing of Lott, upon the evidence submitted.

This matter comes before me on a petition for a writ of habeas corpus filed by Willie Jackson, on the 9th day of September, 1922.

The petitioner was held to answer to the grand jury by the commissioner of the Juneau precinct, after a hearing on a preliminary examination held on August 8, 1922, upon an information filed with the United States attorney, charging

him with the crime of murder of one H. C. Lott, near Thane, in the precinct aforesaid, on July 25, 1922. The gist of the petition is to the effect that there was no competent evidence submitted before the magistrate tending to incriminate the petitioner or connect him with the crime charged, and specifically the petitioner alleges that the only evidence submitted before the magistrate was the evidence of one Willie Hanson, who petitioner alleges to have been, under his own testimony, an accomplice of the person committing the crime charged, and that such evidence is, under the provisions of section 2262, Compiled Laws of Alaska, insufficient to convict the defendant, unless corroborated by other competent evidence, and that therefore the petitioner should be discharged. The attorney for the petitioner ably argued the case, contending that the court, upon a petition for a writ of habeas corpus, had authority to, and should, inquire into the question of reasonable and probable cause to believe that the crime charged had been committed by the petitioner, and that, if no competent evidence tending to connect him with the crime was submitted at the preliminary examination, he should be discharged.

To the end that the court might inquire into the proceedings, a writ of review of the proceedings before the commissioner, in the nature of a certiorari, was issued at the request of the petitioner, and the same is now before the court. The return of the magistrate on the writ of review, shows that on August 8, 1922, an information was filed before the commissioner, as committing magistrate, by the United States attorney, charging Willie Jackson, the petitioner, with the crime of murder of one H. C. Lott, near Thane, Juneau precinct, Alaska, on July 25, 1922; that the defendant, Jackson, was brought before the magistrate on August 9, 1922, and a preliminary hearing was had at that time, at which petitioner was present and was represented by counsel; that one Willie Hanson testified at such hearing, together with Sam Yaquan, and several other witnesses; that, at the conclusion of the testimony on the part of the United States, petitioner declined to make any statement; and that the magistrate, finding that there was sufficient cause to believe the defendant guilty of the crime charged, held him to answer without bail.

William L. Paul, for petitioner.

Arthur G. Shoup, U. S. Atty., of Ketchikan, contra.

REED, District Judge. The contention of the petitioner is that the order of the commissioner, holding him to answer for the charge, was based solely on the testimony of Willie Hanson, who in his testimony admits he was an accomplice of the person who murdered H. C. Lott on July 25, 1922, which testimony, being uncorroborated, is insufficient to convict, and therefore insufficient for the magistrate to base his finding of probable cause on. In support of this contention, counsel for petitioner cites the case of State v. Smith, 138 Ala. 111, 35 South. 42, 100 Am. St. Rep. 29, a decision rendered by the Supreme Court of Alabama. This case is distinctly in point as supporting the petitioner's petition, provided that the witness, Willie Hanson, was an accomplice, and that the magistrate based his conclusion of probable cause solely on Hanson's testimony. The court in that case says:

"Since . * * * a defendant cannot be convicted of a felony on the uncorroborated evidence of an accomplice, such evidence is insufficient to establish probable cause of the commission of a felony on a preliminary examination of defendant, so as to authorize his commitment to await the action of the grand jury."

I have carefully considered this case, in view of the other authorities, and am unable to follow the reasoning of the learned judge therein. At common law defendant could be convicted on the uncorroborated testimony of an accomplice, but during the eighteenth century a custom gradually grew up among the judges, which grew almost into a rule, that the court should instruct the jury that such testimony should be viewed with caution, and the policy was to discourage a conviction founded on the uncorroborated testimony of an accomplice. Thus in 1884, in Rex v. Smith and Davis, 1 Leach, C. Cas. 479, though it was admitted as an established rule of law that the uncorroborated testimony of an accomplice is legal evidence, it was thought that it was too dangerous to suffer a conviction to take place under such unsupported testimony. In the United States the same rule followed. In State v. Hardin, 2 Dev. & B. (19 N. C.) 407, 411, Ruffin, Chief Justice, said:

"The evidence of an accomplice is undoubtedly competent, and may be acted on by the jury, as a warrant to convict, although entirely unsupported. It is, however, dangerous to act exclusively on such evidence."

At common law, then, the doctrine was almost universally understood to be as amounting to not a rule of evidence, but merely to a counsel of caution given by the judge to the jury. The jury might or might not regard the caution by acquitting or whether there is sufficient to constitute probable cause. It is not necessary that the evidence be sufficient to convict, but only if from the evidence there is good reason to believe the crime alleged has been committed by the accused. The rule that, where there is doubt as to the guilt of the accused, he should have the benefit of it, does not apply in a preliminary examination. It is sufficient if the testimony shows, to the satisfaction of the magistrate, a probable cause that the defendant is guilty of the crime charged.

At common law, on a preliminary examination, if the magistrate has any doubt as to the evidence, he should hold the defendant to answer, for, as said in 2 Blackstone, *p. 296:

"If upon this inquiry [that is, the preliminary examination] it manifestly appears that either no such crime was committed or that the suspicion entertained of the prisoner, was wholly groundless, in such cases only is it lawful totally to discharge him; otherwise, he must either be committed to prison or give bail; that is, put in securities for his appearance to answer the charge against him."

Counsel for petitioner maintains that the evidence of Willie Hanson was not competent, and cites Words and Phrases, First and Second Series, "Competent Evidence," to that effect. Mr. Jones, in his work on Evidence, paragraph 7, thus states the distinction between competent evidence and sufficient evidence:

"By competent evidence is meant that which the very nature of the thing to be proved requires as the fit and appropriate proof in a particular case, such as the introduction of a writing where its contents are the subject of inquiry. By 'satisfactory evidence,' which is sometimes called sufficient evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt. The circumstances which will amount to this degree of. proof can never be previously defined. The only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of a common man."

There is no question in my mind that the evidence of an accomplice is competent, both at a preliminary examination and in the trial of the case, but sufficiency of the evidence to

convict is a rule by the statute which says that it must be corroborated before the jury would be authorized to convict thereon and that the corroboration must be such as tends to connect the defendant with the crime charged.

Believing as I do, after a careful review of all the authorities, that the statute requiring a corroboration of the testimony of an accomplice is merely a rule of evidence, to be followed by the court and jury at the trial of a case, I do not deem the petition for a writ of habeas corpus in this case sufficient. However, I have considered the testimony of Willie Hanson, so far as a summary thereof appears in the petition for a review of the proceedings on preliminary examination in this case. Naturally a transcript of his testimony was not taken by the commissioner, or under his authority, and was not certified up before me; but I have taken the summary thereof as sworn to in the petition for a writ of review as pertinent facts in the case. It therein appears that on the night of July 25, 1922, Willie Hanson and Willie Jackson, both being somewhat intoxicated, went in a boat down to the residence of H. C. Lott, the murdered person, for the purpose of buying some beer, which said Lott had been in the habit of disposing of to the various parties. On arriving near Lott's place, Jackson went up to the house, leaving Willie Hanson at the boat, Jackson telling Hanson that he would go up and purchase the beer; that soon afterward Jackson called Hanson up to the house, and there he saw Lott, lying by the side of the house, dead. While there, Jackson wanted Hanson to carry the body down to the Gastineau Channel and sink it, but Hanson refused. They then went into the house together, and Hanson took some beer and other articles or property belonging to Lott. From this it appears that prior to the time of the murder Hanson had no idea of using any force to get the beer. The purpose was to go and buy the beer, which in itself was an unlawful act. From this counsel for petitioner argues that Hanson was an accomplice in the crime of murder of H. C. Lott.

Considering this testimony, I am not satisfied that Hanson was an accomplice in the murder of H. C. Lott. The great weight of authority is to the effect that an accomplice is one who aids or abets or encourages the crime of which defendant is accused, and the usual test by which to determine whether

one is an accomplice is whether or not he could be indicted and punished for the crime with which defendant is charged, or, as it is sometimes expressed, whether his participation in the offense was criminally corrupt. It is not sufficient that he is connected with the defendant in a prior or different transaction, although such transaction was violative of the law; nor can one, an accessory after the fact in another crime, be considered an accomplice. See R. C. L. 157, pp. 3, 4; 16 Corpus Juris, p. 672, etc.

No one will contend that Willie Hanson, under his testimony, had in view the murder of H. C. Lott at the time of going down to Lott's residence, or even up to the time that he went up to the house at the call of Jackson. It nowhere appears in his testimony that he aided, abetted, or encouraged Jackson to commit the crime of which he is accused. Counsel contends that the rule of law is, where men combine with intent to do an unlawful thing, and in the prosecution of the intent one goes beyond the rest of the party and does acts which they do not perform, all are responsible for what he does, and therefore, reasoning fom this rule, states that Jackson and Hanson combined to do an unlawful act in the purchase of liquor from Lott, and that because, in the prosecution of this design, Lott was killed by Jackson, therefore Hanson is responsible for what Jackson did.

The authorities cited by counsel are nearly all conspiracy cases, and are not in point. The nearest authority in point in this case is the authority cited of Holmes v. State, 6 Okl. Cr. 541, 119 Pac. 430, where a number of persons conspired together to commit a robbery, and one of them was armed with a deadly weapon to be used in such robbery, and the robbery was in fact attempted or committed, but the party robbed resisted, and called for help, and the conspirator armed with the pistol shot him. The court in this case say:

"Every person entering into a conspiracy or common design already formed is deemed in law a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design,"

—citing 3 Greenleaf on evidence, as follows:

"If several persons set out in concert, whether together or apart, upon a common design which is unlawful, each taking the part assigned to him, some to commit the act, and others to watch at

proper distances to prevent a surprise, or to favor the escape of the immediate actors, here, if the act be committed, are all in the eye of the law present and principals."

But Greenleaf goes further and says:

"But if the design is only to commit a small and inconsiderable trespass, such as robbing an orchard or the like, and one of them, on sudden affray, without knowledge of the others, commits a felony, such, for example, as killing a pursuer, the others are not guilty of this felony. So, where one did beat a constable in the execution of his office, and after he had been parted from him and had entirely desisted, a friend of the party renewed the assault and killed the constable, the other party was held innocent; he having not at all engaged after they had separated."

The first of these illustrations of Mr. Greenleaf clearly applies to the present case. The design of the two parties, Jackson and Hanson, going to Lott's place, was to purchase beer. While it was unlawful, yet it was inconsiderable, with the actual crime committed afterwards by one of the parties, and could not possibly, under the testimony, have been in contemplation by Willie Hanson prior to the time of the commission of the deed.

From his testimony, I am not satisfied that Hanson was an accomplice in the murder of H. C. Lott. The petition for a writ of habeas corpus will therefore be denied.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes