**James Burton ING and Raymond Wright, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16199.**

United States Court of Appeals
Ninth Circuit.

May 12, 1960.

Kay & Buckalew, Wendell P. Kay, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., James R. Clouse, Jr., George N. Hayes, Asst. U. S. Attys., Anchorage, Alaska, for appellee.

Before CHAMBERS, MAGRUDER and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

The appellants, James Burton Ing and Raymond Wright, were indicted together with Charles E. Smith, John Walker, Dewey Taylor and Lemuel Ashley Williams charged with uttering and publishing forged checks in violation of § 65–6–1 A.C.L.A.1949.[1]

The indictment contained twenty counts. Appellants were named in each of such counts. Charles E. Smith was named in the first five counts. John Walker was named in counts six to eleven, inclusive. Dewey Taylor was named in counts twelve to eighteen, inclusive. Lemuel Ashley Williams was named in counts nineteen and twenty.

Appellant Ing was convicted of all twenty counts. Appellant Wright was convicted on counts six through eighteen, inclusive, and acquitted of the remaining counts. Smith was convicted on four counts. Walker, Taylor and Williams entered pleas of guilty prior to trial.

Jurisdiction of the district court was conferred by Secs. 53–1–1, 53–2–1 and 65–6–1 of A.C.L.A.1949 and Title 48 U.S.C.A. § 101. Jurisdiction of this court is based upon Title 28 U.S.C.A. §§ 1291 and 1294, prior to the amendments appearing in Public Law 85–508, 72 Stat. 339. For such amendments see Parker v. McCarrey, 9 Cir., 1959, 268 F.2d 907.

The conviction of Smith was reversed by this court. See Smith v. United States, 9 Cir., 268 F.2d 416.

Appellants urge two main contentions on this appeal. These contentions are: First, that the trial court erred in denying motions for acquittal interposed by the appellants based on the ground that there was no evidence connecting or tending to connect the appellants with the commission of crimes charged, except the testimony of alleged accomplices; and, second, that prejudicial error was committed by the United States attorney in allegedly commenting on the failure of the appellants to testify during the trial.

The main witnesses who testified against the appellants were Claude Kenneth Brownfield, John Walker and Dewey Taylor. As previously noted, the last two named persons were indicted jointly with the appellants on certain counts contained in the indictment and to which

1. "That if any person shall, with intent to injure or defraud anyone, falsely make, alter, forge, counterfeit, print or photograph any \* \* \*, or check, or money, \* \* \*; or shall, with such intent, knowingly utter or publish as true and genuine any such false, altered, forged, counterfeited, falsely printed, or photographed record, writing, instrument, or matter whatever, such person, upon conviction thereof, shall be punished, \* \*."

they had pleaded guilty. The appellee concedes that the witnesses Taylor and Walker were accomplices of the appellants within the meaning of Sec. 66–13–59 A.C.L.A.1949, which reads as follows:

"That a conviction can not be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission."

Appellants contend that the witness Brownfield was also an accomplice. Appellee disputes such contention, but in the alternative argues that if Brownfield is found to be an accomplice, then his testimony was sufficiently corroborated by other evidence.

In order to determine the status of the witness Brownfield it is necessary to review briefly the facts preceding the return of the indictment against the appellants.

The parties to this appeal are in agreement that the principal witness who testified against the appellants was Brownfield. Brownfield testified that he first became acquainted with the appellant Ing in the spring of 1956 when Brownfield was introduced to Ing in a tavern in Chicago, and that during subsequent visits between the two Ing told Brownfield that he was trying to get something lined up in the form of checks in Alaska. Brownfield stated to Ing, in response to Ing's query, that he would be interested in taking part in such an activity. Ing informed Brownfield that he would contact him about the matter later. Later in the spring and summer of 1956 Brownfield received several letters from Ing relating to a plan to forge and pass checks in Alaska and instructing Brownfield as to the time he and others should come to Fairbanks, Alaska, and advising Brownfield that he would be contacted by a friend of Ing's in Chicago who would give to Brownfield the checks they were to pass and that he should contact two persons in Peoria, Illinois, by the names of Hausan and Eckley. Brownfield testified that he destroyed these letters.

Brownfield related that late in the summer of 1956 he received a package from a person unknown to him and that the package contained a check protector, two birth certificates and approximately four hundred checks which appeared to be Morrison-Knudsen pay-roll checks. Brownfield states that the checks were already signed by one Guy King, but that otherwise the checks were not completed. The contents of the package were brought to Alaska by Brownfield, who was accompanied by Eckley and Hausan. Brownfield testified that he delivered the contents of the package to Ing in the latter part of August, 1956. The checks were drawn on the First National Bank of Anchorage. Brownfield stated that appellant Ing showed him a genuine Morrison-Knudsen pay-roll check. Ing explained to Brownfield that arrangements had been made to pass checks in both Fairbanks and Anchorage over the long Labor Day week-end, and what the passers of the checks would do in the way of getting out of Alaska before being apprehended.

Brownfield testified that he and Ing typed in names and amounts on the checks and jointly ran them through the check protector. Also, at this time Ing took a picture of Brownfield and pasted it onto an identification card, which identified him as Charles Lappa. In addition to the identification card Brownfield testified that he was furnished by Ing with a birth certificate and a driver's license. Brownfield commenced to cash the checks at Fairbanks and was promptly arrested. He was convicted in December, 1956, for uttering and forging checks in Fairbanks, Alaska. At the time of the trial of appellants, Brownfield was under indictment at Fairbanks on four counts of possessing forged checks and an additional count in which he was charged as being an habitual criminal. Brownfield did not mention the appellant Wright in his testimony.

■ The statute under which appellants were charged, Sec. 65–6–1 A.C.L.A. 1949, quoted supra, includes the designation of two offenses—i. e., that of forgery and that of uttering. They are separate and distinct offenses. DeMaurez v. Squier, 9 Cir., 1944, 144 F.2d 564, certiorari denied 323 U.S. 762, 65 S.Ct. 95, 89 L.Ed. 610; Wiley v. United States, 9 Cir., 1944, 144 F.2d 707. The appellants were charged in each count of the indictment with the offense of uttering a forged check in the Anchorage area.

■ Was Brownfield an accomplice of the appellants in the commission of the crimes of which they were convicted? The Alaska court stated the rule to be applied in determining whether a person is an accomplice within the meaning of the Alaska statute in the following words:

> "The great weight of authority is to the effect that an accomplice is one who aids or abets or encourages the crime of which defendant is accused, and the usual test by which to determine whether one is an accomplice is whether or not he could be indicted and punished for the crime with which defendant is charged, or, as it is sometimes expressed, whether his participation in the offense was criminally corrupt." Ex parte Jackson, 6 Alaska 726.

Such test was approved by this court in Stephenson v. United States, 211 F.2d 702, 53 A.L.R.2d 812.

In reaching a proper answer to the above question, we should note that the Territory of Alaska abrogated the distinction between an accessory before the fact and the principal.[2]

Also should be noted Sec. 65–3–2 A.C.L.A.1949, which reads as follows:

> "That all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals, and to be tried and punished as such."

Under the undisputed evidence in this case Brownfield became an active participant in the criminal venture almost from its inception, knowing full well the plan encompassed the forging and uttering of checks in Alaska at Anchorage and Fairbanks over the Labor Day week-end. He brought to Alaska the four hundred checks to be forged, as well as the check protector. He assisted the appellant Ing in typing in the names and amounts on the checks, including those to be uttered in Anchorage. He assisted in running the checks through the check protector. The criminal activity by Brownfield included all of the checks described in the indictment against the appellants. It is clear to us that Brownfield, under the admitted facts and circumstances of this case, could have been indicted and punished for the offenses of which the appellants were convicted. In the Stephenson case, supra, this court considered the question of whether a thief is an accomplice of one to whom he sells stolen property. In that opinion this court stated at page 704 of 211 F.2d as follows:

> "The authorities are not agreed as to whether the thief is an accomplice of one knowingly receiving stolen property. There is a general rule that he is not. Leon v. State, 1920, 21 Ariz. 418, 189 P. 433, 9 A.L.R. 1393; State v. Gordon, 105 Minn. 217, 117 N.W. 483. The usual test to be applied in determining whether the thief is an accomplice is whether the thief could be con-

2. Sec. 66–9–23 A.C.L.A.1949. "That the distinction between an accessory before the fact and a principal, and between principals in the first and second degree in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, must be indicted, tried, and punished as principals, as in the case of a misdemeanor."

victed of the identical crime for which the defendant is being prosecuted. The reasoning underlying the general rule is that larceny and receiving stolen property are separate crimes, and since the thief cannot be convicted of receiving stolen property from himself, he is not an accomplice.

"To the general rule, however, there is increasing recognition of an exception to the effect that where the thief and the receiver of the stolen property enter into an agreement prior to the larceny for one to steal and the other to receive, the thief is an accomplice of the receiver and vice versa. Yeargain v. State, 1935, 57 Okl.Cr. 136, 45 P.2d 1113; State v. Keithley, 1928, 83 Mont. 177, 271 P. 449. The exception is based on the distinction between one who is an accessory both before and after the fact and one who is merely an accessory after the fact. The theory is that the previous arrangement between the thief and receiver amounts in effect to a conspiracy for both the theft and receipt of the stolen property. Under such circumstances the usual test for determining an accomplice is met since the thief and the receiver can be prosecuted for both the theft and receipt of stolen property. See, Aaronson v. United States, 4 Cir., 1949, 175 F.2d 41.

"An increasing number of jurisdictions follow the so-called minority view that the thief is an accomplice of one to whom he sells stolen property. People v. Kupperschmidt, 1924, 237 N.Y. 463, 143 N.E. 256, 32 A.L.R. 447; State v. Coroles, 1929, 74 Utah 94, 277 P. 203. The minority view is based either on a statute broadening the definition of principals or the proposition that one may be both a principal and an accomplice by the doing of separate and distinct acts; the thief by the separate act of sale becomes an accomplice of the one who purchases

from him, knowing the property to have been stolen."

In light of the language contained in the Stephenson case and the broad definition of "principal" contained in the Alaska statutes above quoted, we find no difficulty in holding that under the undisputed evidence in this case Brownfield was an accomplice of the appellants in the commission of the offenses charged against the appellants.

■■ Since we hold that Brownfield was an accomplice and since appellee concedes that the witnesses Taylor and Walker were accomplices of the appellants, we now proceed to determine if their testimony was corroborated by such other evidence as tends to connect them with the commission of the offenses of which the appellants were convicted. Sec. 66–13–59 A.C.L.A.1949, quoted supra, states that "the corroboration is not sufficient if it merely show the commission of the crime or the circumstances of the commission".

The only other testimony offered and received against the appellant Ing is as follows:

1. That Ing was in the Anchorage area and stayed at the Westward Inn at Anchorage from August 31, 1956, through September 2, 1956.

2. The identification card which Brownfield testified Ing gave to him was received in evidence.

3. The driver's license which Brownfield testified Ing gave to him was also received in evidence. Physical examination of the driver's license with the naked eye indicates that the name "James B. Ing" had been partially erased as the name of the party to whom the license had been issued and the name "Charles Wright" filled in. There was no evidence offered relating to the identification card or the driver's license except the testimony of Brownfield.

The only evidence offered and received against the appellant Wright, other than the testimony of conceded accomplices, is as follows:

1. That Wright was in the Anchorage area and stayed at the home of Eli Williams over the Labor Day week-end.

2. That on one occasion, the date of which was extremely uncertain, Wright was seen at the home of Eli Williams and that the co-defendants Walker and Taylor were also present.

In jurisdictions which require that the testimony of an accomplice be corroborated, the rule appears to be well established that the corroborative evidence must be considered without the aid of the testimony to be corroborated, and that such corroborating evidence must connect or tend to connect the accused with the commission of the crime with which he is charged. 22 C.J.S. Criminal Law § 812, p. 1394. Such testimony is not sufficient if it requires the interpretation and direction of the testimony to be corroborated. People v. Hoyt, 20 Cal. 2d 306, 125 P.2d 29; People v. MacEwing, 45 Cal.2d 218, 288 P.2d 257. In our view the independent evidence in this case does not tend to connect the appellants with the commission of the crimes of which they were convicted. The facts and circumstances relied upon in this case for corroboration do no more than show an opportunity for the appellants to have committed the crimes or connect them with the perpetrators. Under the plain language of Sec. 66–13–59 A.C.L.A.1949 the judgments of conviction under review cannot stand.

■ We will now consider appellants' contention that prejudicial error was committed by the United States attorney in allegedly commenting on the failure of appellants to testify during the trial. This point was considered by us in Smith v. United States, supra. Smith was a co-defendant of the appellants in the first five counts of the indictment. What we said in the Smith case is equally applicable to the appellants in this case. In considering the appeal of Smith we said at page 420 of 268 F.2d:

"Error is also predicated upon the failure of the court to make plain to the jury, by admonition to the United States Attorney or specific instruction to the jury, that a defendant is not required to produce evidence against himself or in his defense and that the failure of defendant to testify cannot be commented upon or referred to in argument."

Further at the same page we stated:

"While there was a general instruction buried among the rest that defendants had a right to elect not to take the witness stand and that the jury should draw no unfavorable inference against them on that account, this instruction was not sufficiently connected nor sufficiently forceful to overcome the reference by the prosecuting attorney to defendants and their failure to rebut the evidence against them. Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650.

"In Bruno v. United States, 308 U.S. 287, 292–293, 60 S.Ct. 198, 200, 84 L.Ed. 257, it was said: 'The accused could "at his own request but not otherwise, be a competent witness. And his failure to make such a request shall not create any presumption against him." Such was the command of the law-makers. The only way Congress could provide that abstention from testifying should not tell against an accused was by an implied direction to judges to exercise their traditional duty in guiding the jury by indicating the considerations relevant to the latter's verdict on the facts.' "

We then concluded in the Smith case as follows:

"This Court is of opinion that these two failures of the court to instruct when the matter was called to its attention constitute, under the situation in this case, reversible error."

We adhere to the views expressed in the Smith case on this point.

368

For the reasons and on the grounds herein stated the judgments appealed from are reversed and the cause remanded with directions to grant appellants a new trial.