**UNITED STATES**

v.

**Sergeant Carl R. SANDERS, FR378–66–8735 United States Air Force.**

**ACM 29430.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 May 1991.

Decided 8 April 1992.

Appellate Counsel for the Appellant: Lieutenant Colonel Francis T. Lacey (ar-

gued), Colonel Jeffrey R. Owens, Major Marilyn A. Gordon, Major Alice M. Kottmyer, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Captain David C. Wesley (argued), Lieutenant Colonel Brenda J. Hollis, and Major Jeffrey C. Lindquist.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

LEONARD, Senior Judge:

A general court-martial composed of officer members convicted appellant of wrongfully using cocaine on divers occasions and sentenced him to a bad-conduct discharge, confinement for 6 months, forfeiture of $100 per month for 6 months, and reduction to E–1.[1] Appellant alleges the government failed to produce sufficient evidence to support his conviction and the military judge erred by failing to give a requested accomplice instruction and by admitting two prosecution exhibits. We agree with the latter two allegations and we reverse appellant's conviction.

### Facts

The sole evidence of appellant's alleged cocaine use came from the testimony of Airman White and Airman Viser. Prior to appellant's trial, both airmen had been convicted by courts-martial of divers uses of marijuana, hashish, and cocaine. White and Viser testified that they and appellant belonged to a group called the "Dirty Crew" and that they used cocaine with appellant in Germany near Bitburg Air Base and on trips to Holland. With the exception of the testimony of Viser about two uses in Holland, one during September 1989 and the other during January 1990, both airmen were uncertain about the frequency and dates of appellant's use of cocaine and who supplied the cocaine. White could not remember the year or month that any use occurred. When confronted with the stipulation of fact from his trial, Viser

changed his testimony about the dates of the two uses of cocaine he purportedly witnessed. Both airmen testified the uses occurred as the "Dirty Crew" partied at a house in Germany or at the house of a Dutch national they visited in Holland. Usually some member of the group brought cocaine and shared it with the other group members wishing to use it. Both Viser and White testified that not everyone in the "Dirty Crew" used cocaine or other illegal drugs.

In addition to the testimony of White and Viser, the government introduced, over defense objection, two items of physical evidence. Agents of the Air Force Office of Special Investigations (OSI) seized a brass scales and a bottle of Gold Seal Root during a consent search of appellant's on-base room on 2 April 1990. An OSI agent who participated in the search testified that the agents seized both items as drug paraphernalia. The stipulated testimony of Airman First Class McLaurin and another person in appellant's unit revealed that the seized scales belonged to McLaurin who had left it with appellant in March 1990 to hold for him. McLaurin's stipulated testimony related that the OSI seized the scales before McLaurin reclaimed them. The government did not rebut this evidence.

The OSI agent who participated in the search also testified that Gold Seal Root was considered by persons who use drugs as a diuretic that could mask the presence of THC, the active ingredient of marijuana, in a person's urine. White testified that Gold Seal Root helped to hide THC in a urinalysis. Viser testified that he had sent the bottle of Gold Seal Root to Germany from the United States sometime after June of 1990 at the request of an Airman Heath. He also testified that Gold Seal Root was thought to purify your system and hide drugs. The defense objected to the admission of both offered exhibits, claiming that they lacked relevance to appellant's case and, even if relevant, the balancing test of Mil.R.Evid. 403 required their exclusion.

---

1. The court members acquitted appellant of another offense of using cocaine. The convening authority approved the adjudged sentence.

Although the military judge initially refused to admit the scales, he ultimately overruled defense objections to both exhibits and admitted them.

Following the government's case, the defense offered evidence of appellant's good military character and testimony and documentary evidence showing appellant performed temporary duty in Italy from 7 September through 27 September 1989 and in the United States from 27 January through 20 February 1990.

At the conclusion of the evidence, the parties held a session without members to decide appropriate instructions for findings. Defense counsel requested a tailored accomplice instruction based on the instruction provided in Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, paragraph 7–10 (February 1989). The proposed instruction informed the court members that testimony of accomplices must be considered with great caution and that an accused could not be convicted on the uncorroborated testimony of an accomplice if that testimony was self-contradictory, uncertain, or improbable.

Trial counsel opposed the proposed instruction, contending Viser and White were not accomplices and that, even if they were, the 1984 Manual for Courts–Martial (MCM) eliminated the requirement to instruct on the need for corroboration of accomplice testimony. The military judge agreed with the trial counsel's position on the corroboration portion of the instruction. He instructed the court members on the definition of accomplice, told them to decide whether Viser and White met that definition, and, if they found them to be accomplices, they should consider their testimony with great caution.

Following argument and the military judge's instructions, the court members acquitted appellant of use of cocaine in Germany, but found him guilty of divers use of cocaine in Holland.

### Prosecution Exhibits 1 and 2

Appellant urges us to find the military judge's admission of the scales and Gold Seal Root pills (prosecution exhibits 1 and 2) prejudicial error. He claims both exhibits' connection with appellant and his charged offenses was so tenuous that the exhibits were not relevant or, if any relevance existed, it was far outweighed by the potential for unfair prejudice. We agree.

The uncontradicted evidence shows the scales did not belong to appellant. Further, this same uncontradicted evidence showed the other person did not purchase the scales until March or April of 1990. Appellant's charges allege that his use of cocaine encompassed the periods 1 November 1988 to 1 December 1988 and 10 April 1988 and 1 February 1990, and the government offered no proof of any drug use after the last week of January 1990. No evidence showed the scales contained residue of illegal drugs or any other indication of use in connection with illegal drugs. When confronted with them during the search of his room, appellant made an unsolicited comment that they were for decorative purposes. The picture of the exhibit included with the record depicts finely crafted brass scales with assorted brass weights all enclosed in a nice leather-like case, exactly the type of scales one may acquire for decoration.

Evidence introduced by the government showed Gold Seal Root pills were sent to Germany by Viser in June of 1990 after his reassignment. He sent them to an Airman Heath at that airman's request. That would mean the earliest they could have been in appellant's possession would be some 5 months after the end of the last period of his charged illegal drug use. Further, the testimony of the OSI agent and White claimed that the pills acted as a diuretic and were thought to help mask the presence of THC in a person's system. Although Viser testified that he thought they might flush "drugs" from your system, no one testified that they were thought to have any effect on cocaine use.

The trial counsel's purpose in seeking the admission of both the scales and the pills was obvious. She sought to bolster the weak case offered by the testimony of government's accomplice witnesses. This evidence permitted her to argue that appellant obviously used cocaine because he had

**1090**

drug paraphernalia and evidence of marijuana use in his possession. She devoted a significant portion of her findings argument to that precise subject.

▮ Were the scales relevant to appellant's alleged illegal drug use? We find that they were not and that the military judge abused his discretion in admitting them. Relevance under Mil.R.Evid. 401 includes "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although this definition broadened the standard for admissibility of evidence before courts-martial, it did not render the concept of relevance meaningless. MCM, App. 22, M.R.E. 401, A22–21 (1984). Military judges must still determine whether the evidence involves a fact which "is of consequence to the determination of the action." The scales do not meet this test.

▮ The issue of the relevance and admission of the Gold Seal pills is a closer question. However, when evidence of this nature is offered and an objection is interposed, relevance alone does not dispose of the issue. Mil.R.Evid. 403 imposes the additional requirement of determining whether relevant evidence should be excluded because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members ..." We cannot find any indication that the military judge ever performed a Mil.R.Evid. 403 balancing test with respect to the Gold Seal pills. Under such a test, he should have explored the potential unfair prejudice and confusion of issues their admission could cause. Appellant faced no charges of use of marijuana or hashish. However, the OSI agent and White testified that Gold Seal pills had a reputation in the drug community for masking THC. This testimony created an unfair inference and confused the issues by insinuating that appellant used marijuana near June of 1990 and, therefore, he may also have used cocaine during a period ending 5 months earlier. We find any limited

probative value of the Gold Seal pills was far outweighed by the danger of unfair prejudice and confusion of the issues caused by their admission and that the military judge abused his discretion in admitting them. Mil.R.Evid. 403; *United States v. Sheppard,* 29 M.J. 859 (A.F.C.M.R.1989).

The Accomplice Instruction

▮ On appeal, the parties take almost the same position on accomplice instructions as they did at trial. The government insists the 1984 Manual for Courts–Martial eliminated the requirement for any accomplice instruction concerning corroboration or whether uncorroborated accomplice testimony is self-contradictory, uncertain, or improbable. As a fall-back position, the government argues the testimony of White and Viser was not self-contradictory, uncertain, or improbable and it was corroborated by the drug paraphernalia found in appellant's room.

Appellant contends the requirement for the accomplice instruction requested by the defense at trial derives from case law that is still valid. He argues the origin of the requirement was acknowledged by the drafters of 1984 Manual for Courts–Martial and the President's promulgation of the Manual did not change prior law concerning accomplice testimony instructions. We agree with appellant.

At the time of promulgation of the 1984 Manual, a body of military case law existed concerning accomplice testimony instructions. The origin of these instructional requirements arose out of Board of Review cases that pre-dated the 1951 Manual. *See United States v. Boswell,* 44 B.R. 35 (A.B.R.1944); *United States v. Loudon,* 39 B.R. 109 (A.B.R.1944); *see also,* The Legal and Legislative Basis, Manual for Courts–Martial, 1951 at 241. The law derived from these cases appeared in MCM (1951) at paragraph 153a as factors affecting the credibility of witnesses and in MCM, 1969 (Rev.) at paragraph 74a(2) as principles of findings related to weighing evidence.[2]

2. Upon initial promulgation of MCM, 1969    (Rev.), the explanation of accomplice testimony

As to accomplice testimony, MCM, 1969 (Rev.) paragraph 74a(2) provided:

Also, a conviction cannot be based upon uncorroborated testimony given by an accomplice in a trial for any offense if the testimony is self-contradictory, uncertain, or improbable. Even if apparently corroborated and apparently credible, testimony of an accomplice which is adverse to the accused is of questionable integrity and is to be considered with great caution. When appropriate, the above consideration should, upon request by the defense, be included in the general instructions of the military judge....

In addition to the above guidance on accomplice testimony, paragraph 74a of the 1969 Manual, included subparagraphs entitled "Basis of findings," "Weighing evidence," and "Reasonable doubt" providing guidance for instructions on these subjects. Rule for Courts–Martial (R.C.M.) 918(c) of the 1984 Manual entitled "Basis of findings" states only:

Findings may be based on direct or circumstantial evidence. Only matters properly before the court-martial on the merits of the case may be considered. A finding of guilty of any offense may be reached only when the factfinder is satisfied that guilt has been proven beyond a reasonable doubt.

The prior elaboration of paragraph 74a, MCM, 1969 (Rev.) concerning accomplice testimony, reasonable doubt, weighing evidence, credibility of witnesses, and comparison of direct and circumstantial evidence

does not appear in R.C.M. 918 or any of the other Rules for Courts–Martial.

We must resolve whether failure to specifically include previous guidance about corroboration of accomplice testimony in the Rules for Courts–Martial of the 1984 Manual eliminated the need to instruct on this subject. We find that the drafters of MCM 1984 did not intend to eliminate any portion of the prior instructional requirements for accomplice testimony and that the need for instructions concerning such testimony still arises from military case law.

The 1984 Manual drafters indicated their intent with respect to accomplice and other witness credibility instructions in the discussion and analysis associated with R.C.M. 918 and 920. As we noted earlier, paragraph 74a of MCM, 1969 (Rev.) entitled "Findings," contained detailed guidance on reasonable doubt, circumstantial and direct evidence, and weighing evidence. R.C.M. 918, also entitled "Findings," contains none of this detailed guidance.[3] Instead, only a summary of paragraph 74a's prior guidance follows R.C.M. 918(c) as nonbinding discussion. According to the drafter's analysis, R.C.M. 918(c) derives from paragraph 74a of MCM, 1969 (Rev.). MCM, App. 21, R.C.M. 918(c) (1984).

R.C.M. 920(e), "Required instructions," lists no requirement for instructions about credibility of witnesses, weighing the testimony of witnesses, comparison of direct and circumstantial evidence, or accomplice testimony.[4] However, subparagraph (7) requires: "Such other explanations, descrip-

---

appeared in the Rules of Evidence chapter at paragraph 153a as factors affecting the credibility of witnesses. After the Military Rules of Evidence replaced the former Rules of Evidence chapter, the accomplice language was moved to paragraph 74a(2) under "Findings."

**3.** We note in passing that the military judge in this case gave the court members instructions on the credibility of witnesses and weighing evidence taken almost word for word from the old guidance of paragraph 74a, MCM, 1969 (Rev.). None of his instructions on those subjects appears in either R.C.M. 918(c) or 920(e). Further, most of it is not mentioned in the discussion of R.C.M. 918(c). However, neither party objected to those portions of his instruc-

tions as being no longer required after promulgation of the Manual for Courts–Martial (1984).

**4.** Instructions required by R.C.M. 920(e) include:
(1) A description of the elements of each offense charged;
(2) A description of the elements of each lesser included offense in issue;
(3) A description of any special defense under R.C.M. 916 in issue;
(4) A direction that only matters properly before the court-martial may be considered;
(5) The statutory charge from Article 51(c), UCMJ;
(6) Directions on the procedures under R.C.M. 921 for deliberations and voting.

tions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, sua sponte, should be given." Further, the discussion following R.C.M. 920(e) states: "*See* R.C.M. 918(c) and discussion as to reasonable doubt and other matters relating to the basis for findings which may be the subject of an instruction."

The combination of the content of R.C.M. 918 compared with its predecessor paragraph 74a, the discussion following R.C.M. 918(c), the discussion of R.C.M. 920(e), and the drafter's analysis of R.C.M. 918(c) leads to an obvious conclusion. The drafters of 1984 Manual made a conscious choice not to clutter the Rules for Courts–Martial with elaborate explanations of the basis for findings or specific, required instructions on findings. They limited required instructions for findings to well established and statutory instructional requirements. For possible instructions other than those specifically listed in R.C.M. 920(e), the drafters included the "such other explanations" (subparagraph (7)), used the discussion of R.C.M. 918(c) to refer to instructional subjects of importance at the time of revision, and included the most important cases on each subject in their analysis. Using this scheme, the Rules for Courts–Martial did not lock-in instructional requirements that might be changed or rendered obsolete by developments in military and federal case law. This is consistent with the overall structure and application of the 1984 Manual for Courts–Martial as set forth in the Preamble, Part I, MCM (1984). Discussion accompanying paragraph 4 of that Preamble tells us that the discussion and analysis of MCM (1984) are nonbinding, but designed to refer to requirements established by other legal authorities, such as binding judicial precedents, applicable to courts-martial.

Further, the drafter's references to accomplice testimony in the discussion and analysis of R.C.M. 918(c) clearly indicated continuing validity of the requirement for corroboration of accomplice testimony. Although R.C.M. 918(c)'s discussion contains only one brief sentence about accomplice testimony, that sentence states: "*Even if apparently credible and corroborated,* the testimony of an accomplice should be considered with great caution" (emphasis added). To alert the reader to the law for accomplice testimony corroboration at the time of release of 1984 Manual, the drafters added the following to their analysis of R.C.M. 918(c): "As to instructions concerning accomplice testimony, *see United States v. Lee,* 6 M.J. 96 (C.M.A.1978); *United States v. Moore,* 8 M.J. 738 (A.F.C.M.R.1980), *aff'd,* 10 M.J. 405 (C.M.A.1981) *(regarding corroboration )* (emphasis added).

Our final indication of the drafter's intent comes from their omitting from the analysis that R.C.M. 918 or 920 represented a change in the law for accomplice instructions. In the Introduction to the Analysis, the drafters state one of the primary purposes of the Analysis includes expressing the intent of the drafters "particularly with respect to the purpose of substantial changes in present law." MCM, App. 21, b(2), A21–3 (1984). If the drafters intended a change, the analysis would have so stated. *Id.* In fact, their intent is clearly shown as the contrary. They intended that accomplice instructions, along with other instructions concerning weight to be accorded evidence and credibility of witnesses, be derived from requirements imposed by military case law.

We find that requirements to instruct on weight to be accorded evidence, credibility of witnesses in general, and accomplice testimony unchanged by the 1984 Manual for Courts Martial. Instead, the requirements for such instructions depend on military case law precedent.

▆▆▆ Both *Lee* and *Moore* remain valid precedent. Under military case law, the need to instruct on accomplice testimony depends upon the request of counsel and the state of the evidence. If counsel does not request accomplice testimony instructions, failure to *sua sponte* give such instructions would not be plain error unless the accomplice's testimony constituted the only evidence to some of the elements of proof and the accomplice was considerably

impeached. *Lee,* 6 M.J. at 97; *United States v. Lell,* 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966). Upon request by counsel, the military judge should give an accomplice instruction unless no evidence exists on which the court could find a witness an accomplice. *United States v. Harrison,* 5 M.J. 693, 694 (A.F.C.M.R.1978); *United States v. Nolte,* 440 F.2d 1124 (5th Cir. 1971), *cert. denied* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971). If the evidence is disputed as to whether a witness is an accomplice, the military judge should submit the issue to the court members by instructions.[5] *United States v. Hopewell,* 4 M.J. 806 (A.F.C.M.R.1978); *United States v. McCue,* 3 M.J. 509, 512 (A.F.C.M.R.1977). On the other hand, if it is clear that the witness in question is an accomplice as a matter of law, the military judge should so instruct the members. *United States v. Graalum,* 19 C.M.R. 667 (A.F.B.R.1954), *pet. denied* 19 C.M.R. 413 (C.M.A.1955); *McCue,* 3 M.J. at 512; *United States v. De Cicco,* 424 F.2d 531 (5th Cir.1970).

■■■ At trial, the government maintained that White and Viser were not accomplices; however, in its response to appellant's brief, the government concedes they were accomplices to appellant's cocaine use. To be an accomplice, the witness must have been culpably involved with or could have been convicted of the same crime for which the accused is prosecuted. *United States v. McKinnie,* 32 M.J. 141, 143 (C.M.A.1991); *United States v. Scoles,* 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963); *McCue,* 3 M.J. at 512. A witness who shares illegal drugs with an accused as part of an informal arrangement or conspiracy has been held an accomplice to that illegal drug use as a matter of law. *United States v. Jordan,* 24 M.J. 573, 575 (N.M.C.M.R.1987); *United States v. Oxford,* 21 M.J. 983, 985 (N.M.C.M.R.1986). We agree with that position. Under the circumstances of this case, the military judge should have instructed the court members that White and Viser were accomplices as a matter of law.

■■■ Once a military judge decides to give an accomplice instruction, the wording of that instruction depends on whether the accomplice testimony is corroborated. An accused cannot be convicted based on the uncorroborated testimony of an accomplice if the testimony is self-contradictory, uncertain, or improbable. *McKinnie,* 32 M.J. at 145; *United States v. Aguinaga,* 25 M.J. 6, 7 (C.M.A.1987); *Lee,* 6 M.J. at 97; *United States v. Rehberg,* 15 M.J. 691, 693 (A.F.C.M.R.1983); *Moore,* 8 M.J. at 740; *McCue,* 3 M.J. at 513; *United States v. Moore,* 2 M.J. 749, 754 (A.F.C.M.R.1977); *Boswell,* 44 B.R. at 42; *Loudon,* 39 B.R. at 114.

■■■ If the accomplice's testimony is corroborated, the military judge need not give the court members instruction on corroboration or determination of self-contradiction, uncertainty, or improbability. *Lee,* 6 M.J. at 98; *United States v. Allums,* 5 U.S.C.M.A. 435, 18 C.M.R. 59, 63 (1955). In that case, the military judge need only instruct that the testimony is of questionable integrity and should be considered with great caution. The appropriate instruction in such cases would include the first three paragraphs of instruction 7–10, DA Pam 27–9.[6]

■■■ Courts have found no prejudicial error upon failure to give the corroboration portion of an accomplice instruction when the record shows the accomplice testimony not to be self-contradictory, uncertain, or improbable. *See e.g., McKinnie,* 32 M.J. at 145. However, if corroboration is lacking, the better practice is to give the instruction and allow the court members to decide the state of the evidence rather than requiring the appellate courts to make that determination.

---

5. The first portion of the sample accomplice instruction provided in DA Pam 27–9, paragraph 7–10 gives appropriate guidance for court members to determine whether a witness is an accomplice.

6. The third paragraph will be unnecessary if the military judge determines that the witness is an accomplice as a matter of law.

■ Was the corroboration aspect of the accomplice instruction required in appellant's case? We hold it was. Both Viser and White qualified as accomplices. The testimony of one accomplice cannot corroborate the testimony of another. *Rehberg,* 15 M.J. at 693; *United States v. Williamson,* 2 M.J. 597 (A.F.C.M.R.1976). Reviewing all the other evidence in appellant's case, we do not find evidence independent of the testimony of Viser and White that connects appellant with the charged offenses.[7] *Moore,* 8 M.J. at 740; *United States v. Wilson,* 2 M.J. 683, 685 (A.F.C.M.R.1976), *aff'd,* 3 M.J. 186 (CMA 1977); *Ing v. United States,* 278 F.2d 362 (9th Cir.1960). Therefore, the accomplice testimony of White and Viser is uncorroborated as a matter of law. *Id.*

■ We also find sufficient question as to the uncertainty and self-contradiction of White and Viser's testimony to require instruction on corroboration of accomplice testimony. White expressed considerable uncertainty about appellant's alleged use of cocaine. He could not even specify a year or month that a use took place. Viser's testimony provided more certainty, but he contradicted himself a number of times. At one point on direct, he testified that appellant used cocaine at a location in Germany in November 1988, but later, while still on direct testimony, he stated he could only remember two uses, both in Holland. We cannot find the testimony of White and Viser was not uncertain, self-contradictory, or improbable.

Our review of the record reveals the court members in this case were very conscientious about their duties. They asked a number of insightful questions and acquitted appellant of one of the charged offenses. Further, appellant's record prior to trial was excellent and he used this good military character in his defense. Therefore, we conclude that, under the circumstances of this case, failure to give a complete and comprehensive instruction on accomplice testimony resulted in prejudicial error.[8] Absent such an instruction, the court members did not have sufficient guidance to properly evaluate the testimony of Viser and White.

Our findings of improper admission of prosecution exhibits 1 and 2 and failure to give a proper accomplice instruction make it unnecessary to address appellant's other assertion of lack of sufficient evidence to support his conviction. We find the improper admission of exhibits and instructional error materially prejudiced the substantial rights of appellant and we set aside his conviction and sentence. Article 59(a), UCMJ, 10 U.S.C. § 859(a). A rehearing may be ordered.

Judges RIVES and JAMES concur.

---

7. The government contends that the brass scales, prosecution exhibit 1, and the Gold Seal Root pills, prosecution exhibit 2, corroborate the testimony of White and Viser. Even if we had not found error in the admission of these exhibits, we would find difficulty in establishing the connection between these exhibits and the charged offenses. The government stipulated to uncontradicted testimony that the scales belonged to another airman and were not brought to appellant's room until more than a month after the last date appellant is alleged to have used cocaine. According to the government's own witness, the pills were sent to another airman some 4 to 5 months after the last date the government alleged appellant used cocaine.

8. The appropriate instruction concerning corroboration of accomplice testimony is set forth in the last three paragraphs of instruction 7–10, DA Pam 27–9. The entire instruction was also recently included as an appendix to *United States v. Davis,* 32 M.J. 166, 168 (C.M.A.1991).